FILED

2026 Aug-04  PM 01:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

JESSICA LITTLE,

    **Plaintiff,**

**v.**

**TOPRE AMERICA
CORPORATION,** *et al.***,**

    **Defendants.**

**Case No. 5:25-cv-310-HDM**

## MEMORANDUM OPINION AND ORDER

Plaintiff Jessica Little sues Defendants Topre America Corporation ("Topre") and Kelly Ozbolt, her current employer and former co-worker, respectively, asserting claims for a sex-based hostile work environment, battery, failure to train and supervise, and outrage. (Doc. 1). Topre has moved for summary judgment on the three counts brought against it: Count One (sex-based hostile work environment), Count Three (failure to train and supervise), and Count Four (outrage). (Doc. 22). Topre's motion is fully briefed, (docs. 22, 27, 29), and, with the benefit of oral argument, the court finds it is due to be **GRANTED** as to Count One. After dismissing Count One, the court declines to exercise supplemental jurisdiction over

Counts Two, Three, and Four and will **DISMISS** them **WITHOUT PREJUDICE**, with Topre's motion **DENIED AS MOOT** as to Counts Three and Four.[1]

## I.    BACKGROUND

In ruling on Topre's motion, it is necessary to divide the factual background of this case into two distinct categories: (1) the facts specific to Little herself and the incident with Ozbolt that is the basis of this lawsuit and (2) the facts of past complaints about Ozbolt from other female Topre employees from which Little attempts to argue that she was working in an environment of severe or pervasive harassment.[2]

A. Plaintiff Jessica Little

On June 16, 2016, Topre, a metal stamping automotive parts supply company, hired Little to work in its plant in Cullman, Alabama. (Docs. 21-1, ¶ 6; 21-3 at 15, 54:13–15). In September 2020, Topre promoted Little to Team Leader, (doc. 21-3 at 17, 62:11–17), the same position held by Ozbolt, *id.* at 20, 75:20–24. Before the

---

[1] Little asserts Counts Two and Four, for common-law battery and outrage, respectively, against Ozbolt, (doc. 1, ¶¶ 33; 57), who has not moved for summary judgment, but the supplemental jurisdiction analysis contained herein necessarily applies to those claims as well.

[2] Although the court must view all facts in the light most favorable to Little as the non-moving party, *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 836–37 (11th Cir. 2006), she did not submit any evidence in support of her opposition to summary judgment, and all of the evidentiary citations in this opinion must necessarily come from Topre.

incident made the basis of this lawsuit, Little never experienced any other act of alleged harassment, battery, or outrage from Ozbolt. *Id.* at 19, 69:8–15.

On the morning of October 4, 2023, Little was standing at a computer at the Topre plant to check the weekly schedule when she sensed someone come up behind her. *Id.* at 19–20, 72:17–73:22. The unknown person "inserted something in between [Little's] butt," *id.* at 20, 73:8–9, that she later testified "was a hard object" that "felt like an antenna or a pen," *id.* at 41, 157:23–158:5.[3] The person started at the top of her buttocks and moved the object down. *Id.* at 40, 154:22–155:3.[4] The contact was not "light to where [she] couldn't feel it, and it wasn't hard to where [she] was physically injured. It was enough to where [she] could feel it." *Id.* at 41, 158:13–17. When Little turned around, she saw Ozbolt standing there with "his hands . . . near [her] bottom" while "smiling and kind of chuckling" and "giggling." *Id.* at 41, 158:21–159:7. Little said, "What the fuck are you doing?! Don't do that fucking shit

---

[3] Little testified at her deposition that she never conclusively learned what the object was. (Doc. 21-3 at 20, 73:23–25).

[4] In her Complaint, Little alleges that Ozbolt "attempted to **insert** [the] object into [her] buttocks through her pants," (doc. 1, ¶¶ 22, 34, 44, 58) (emphasis added), and, at her deposition, she and Topre's counsel discussed the subtle distinction in attempting to insert the object versus moving it over the surface of her buttocks on the outside of her clothes, (doc. 21-3 at 40–41, 156:8–157:22). Little herself significantly muddied the waters as to the distinction between these two actions when she testified that she sees no difference in the attempt to insert an object and the act of dragging it over one's buttocks on the outside of one's clothes. *Id.* at 41, 157:16–21. The court finds it unnecessary to address the distinction in these two actions for two reasons: (1) the parties do not address it in their summary judgment briefing, and (2) even assuming it was the patently more objectionable act of trying to *insert* the object, that does not change the court's "severe or pervasive" Title VII analysis herein.

3

to me, I don't like it," and Ozbolt's "smirk disappeared." (Doc. 21-4 at 6–7). After

a brief silence, Ozbolt began making conversation, but Little was not communicative

and did not speak to him again until several hours later, after she reported the

incident to Human Resources. (Doc. 21-3 at 41, 159:17–160:13). The incident did

not leave a mark, bruise, or any other physical evidence of contact, *id.* at 42, 162:17–

24, and she worked the rest of her shift that day, *id.* at 42, 161:5–9.

Later the same day, after finishing her shift, Little handwrote an account of

the incident with Ozbolt. *Id.* at 19, 70:23–72:5. In that handwritten statement, she

succinctly set out the same sequence of facts to which she testified at her deposition

and alleged in her Complaint:

> Today while checking the weekly schedule, without my knowledge,
> Kelly Ozbolt came up behind me. Not knowing what was touching me,
> I felt something go down and in[-]between my butt cheeks. All of this
> happened between 8:30 am [and] 9:30 am. I did react to this and said to
> him[,] "What the fuck are you doing?! Don't do that fucking shit to me,
> I don't like it." At first he had a smirk, thinking it was funny, but when
> I reacted he had a different reaction and that smirk disappeared. This is
> something I'm not taking lightly and I would hope something is done
> about it.

(Doc. 21-4 at 6). The statement is signed by Little and dated October 4, 2023, *id.*,

and she provided copies to her supervisors and managers,[5] as well as Topre's Human

Resources department, *id.* at 7. At 2:21 p.m., Little sent Human Resources personnel

---

[5] In Topre's corporate hierarchy, "supervisor" and "manager" are different positions and the latter
outranks the former. (Doc. 21-1, ¶ 11).

4

an email that essentially reproduces the handwritten statement verbatim, only adding that she had decided to send the email in case her written statement was lost. *Id.*

That same day, after Little sent the email, she met with representatives from Human Resources to discuss the incident and her complaint against Ozbolt. (Doc. 21-2 at 131:11–132:4). After speaking with Little, Human Resources personnel spoke with Ozbolt, who "admitted that he had touched [her] with the tip of his pen." *Id.* at 133:9–21. Ozbolt was suspended the same day and asked to leave the premises, *id.*, and, other than a brief attempt to apologize shortly after the meeting with Human Resources, Little never saw him at the Topre plant again, (doc. 21-3 at 26, 99:9–14). Topre formally terminated Ozbolt on November 15, 2023, *id.* at 9, 30:1–11, while Little is still employed by Topre, (docs. 1, ¶ 20; 6, ¶ 20; Transcript of Oral Argument at 2:20–22).[6]

B.  Previous Complaints About Ozbolt

A key component of Little's theory of the case is that the incident with Ozbolt on October 4, 2023, was not an isolated occurrence but, rather, part of an ongoing pattern of severe or pervasive sexual harassment at Topre's Cullman plant. (*See*

---

[6] At her deposition, Little testified that, following the incident with Ozbolt, she experienced various physical and mental side effects, such as increased anxiety, (doc. 21-3 at 34, 131:4–25), and premature contractions, *id.* at 42, 163:16–164:14. The parties raise and discuss these issues in their summary judgment briefing, (docs. 23 at 8; 27 at 5, 13, 14, 17), but they are immaterial to the court's analysis herein because these subjective symptoms after the alleged harassment have no bearing on whether the environment was objectively hostile.

Docs. 1, ¶ 27; 27 at 11–12). In making this argument, Little relies heavily on complaints about Ozbolt—both formal and informal—from three other female Topre employees: Alexis "Lexi" Rich, Marlene Esco, and Holly McDowell. Although none of these women are parties to this suit, (*see* doc. 1, ¶¶ 5–10), it is necessary for the court to briefly summarize the undisputed facts for each.[7]

### a. Alexis "Lexi" Rich

Ms. Rich has worked at Topre since July 2020, first on assignment from a temporary staffing agency and then as a full-time employee. (Doc. 21-8, ¶¶ 1–4). Her first position was Assembly Operator, *id.*, ¶ 3, during which time she was assigned to work under Ozbolt as Team Leader, *id.*, ¶ 5. Without providing a more specific timeline, Ms. Rich testified that "Ozbolt would say flirtatious [and] inappropriate things," including comments on how her buttocks looked in a pair of pants and questions about her favorite sexual position. *Id.*, ¶ 6. Ms. Rich told Ozbolt to stop speaking to her in such a suggestive and inappropriate manner and he complied, *id.*, ¶¶ 6, 8, but, in March 2022, he licked her ear "like how a dog would

---

[7] The parties spend considerable time arguing about whether Ms. Rich, Ms. Esco, and Ms. McDowell properly complied with internal protocols for reporting alleged harassment sufficient to put Topre on notice of Ozbolt's conduct, (docs. 23 at 17–22; 27 at 15–16), but the court need not address these arguments. As set out at greater length *infra*, even assuming *arguendo* that Ms. Rich, Ms. Esco, and Ms. McDowell properly complied with all internal reporting procedures in order to inform Topre of Ozbolt's alleged harassment, the timeline for such events is still too attenuated to create a fact question as to whether Little endured sufficiently severe or pervasive harassment.

lick something," *id.*, ¶ 8(c). Ms. Rich told him not to ever do that again and walked away. *Id.*, ¶¶ 8(e)–8(f). Following this incident, Ms. Rich complained to various Topre officials, *id.*, ¶¶ 9–12, and asked to be moved to a different Team Leader, *id.*, ¶ 9(e). Two or three weeks later, Ms. Rich was reassigned to a different Team Leader, *id.*, ¶ 17, and she never "personally witnessed other incidents where Mr. Ozbolt behaved in a manner that [she] considered sexual," *id.*, ¶ 19.

      b.  Marlene Esco[8]

Topre hired Marlene Esco as an Assembly Operator in 2018. (Doc. 21-9, ¶¶ 1–2). Ms. Esco testified by affidavit that Ozbolt "frequently belittled and cursed at [her] and others under his lead, but it was not sexual in nature." *Id.*, ¶ 3. At some unspecified time, Ozbolt "walked up to [Ms. Esco] and . . . put his hands on [her] shoulders and gave [her] a brief shoulder rub, not longer than ten or fifteen seconds, and said, 'my baby.'" *Id.*, ¶ 4. The same day as the shoulder rub, Ozbolt "yelled and cussed at [Ms. Esco] worse than usual," and she complained to Topre officials. *Id.*, ¶ 5. Ozbolt also "started making jokes" insinuating that Ms. Esco and her Team Leader were involved in a sexual or romantic relationship. *Id.*, ¶ 6. Ms. Esco testified

---

[8] Ms. Esco passed away during the pendency of this case, (doc. 21-3 at 21, 78:6–9), and the court notes that it is not necessarily satisfied that her testimony may be reduced to admissible form, *Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005); Fed. R. Evid. 804. The court finds it need not address this issue because, as explained herein, even assuming *arguendo* that the court could properly consider Ms. Esco's testimony, such evidence still falls short of the standard for finding a hostile workplace.

that Ozbolt would make these jokes "when there was an occasion to . . . over the course of [two to three] weeks." *Id.*

Ms. Esco complained to her Team Leader and Ozbolt stopped the jokes but "still treated [her] rudely." *Id.*, ¶ 7. Other than these incidents, Ms. Esco could not recall other incidents with Ozbolt "that [she] considered sexual or physically inappropriate." *Id.*, ¶ 10. Ms. Esco's affidavit does not provide dates for any of this conduct, and the court can only infer that it occurred sometime between 2018 and 2024, *see id.*, ¶¶ 2, 8.

c. Holly McDowell

Topre hired Holly McDowell as an Assembly Operator in October 2018. (Doc. 21-10, ¶ 5). Ms. McDowell testified by affidavit that "[i]n or around late June 2023 . . . Ozbolt walked by [her] and placed his hand on [her] lower back and upper buttocks at the Topre facility . . . in Cullman, Alabama." *Id.*, ¶ 6. According to Ms. McDowell, Ozbolt's "hand was positioned below the waistband of [her] pants and on the upper part of the back pockets." *Id.* Ozbolt "held his hand on [Ms. McDowell's] back for about [fifteen] seconds" and the contact "ended when [she] told him not to touch [her]." *Id.*, ¶ 6(c). Ms. McDowell reported the incident to at least one Topre official, *id.*, ¶¶ 7–8, but had no further incidents with Ozbolt that she considered sexual, as she "rarely interacted with him at all," *id.*, ¶ 11. Ms. McDowell

8

did not witness any other incidents with Ozbolt that she considered sexual, *id.*, ¶ 12, although she heard about Ozbolt licking Ms. Rich, *id.*, ¶ 13.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 mandates that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Hoffman v. Allied Corp.*, 912 F.2d 1379, 1382 (11th Cir. 1990). The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion[] and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). The party opposing summary judgment must designate specific facts showing that there is a genuine issue for trial. *Id.* at 324. The court will construe all facts in the light most favorable to the non-movant, *Domante v. Dish Networks, LLC*, 974 F.3d 1342, 1345 (11th Cir. 2020) (per curiam), although it is limited to considering evidence that can be reduced to admissible form, *Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005).

9

## III.   DISCUSSION

The court finds that Topre's Motion for Summary Judgment is due to be granted as to Count One because the undisputed facts do not show sex-based harassment severe or pervasive enough to constitute a hostile work environment under Title VII. After the court grants summary judgment on Count One, it declines to exercise supplemental jurisdiction over the common-law tort claims in Counts Two, Three, and Four and will deny Topre's motion as moot as to Counts Three and Four.

### A.  Count One: Title VII Sex-Based Hostile Work Environment

In Count One of her Complaint, Little alleges that Topre violated Title VII of the Civil Rights Act of 1964 by subjecting her to a sex-based hostile work environment, (doc. 1, ¶¶ 17–31), but the court finds that the undisputed evidence does not show the objectively severe or pervasive harassment necessary for such a claim. Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).[9] *See also Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (en banc). In

_____

[9] In its Answer to Little's Complaint, Topre admits that it qualifies as an "employer" subject to Title VII. (Docs. 1, ¶ 10; 6, ¶ 10).

*Harris v. Forklift Systems, Inc.*, the Supreme Court, in discussing cognizable causes of action for sex-based discrimination under Title VII, held,

> [T]his language is not limited to economic or tangible discrimination. The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment.

510 U.S. 17, 21 (1993) (citation and some internal quotation marks omitted). When an employer fosters or condones a workplace that is "permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Id.* (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65; 67 (1986)). To succeed on a hostile workplace claim under Title VII, a plaintiff must show all of the following: (1) she is a member of a protected class, (2) she was subjected to unwelcome harassment, (3) the harassment was based on a protected characteristic of the employee, such as sex, (4) the harassment was severe or pervasive enough to alter the terms and conditions of employment, and (5) a basis for employer liability. *Melton v. I-10 Truck Ctr., Inc.*, 166 F.4th 905, 918 (11th Cir. 2026).

In this case, the fourth element—whether Little experienced harassment so severe or pervasive that it altered the terms and conditions of her employment—is

11

the dispositive point.[10] The "severe or pervasive" prong "as defined by the Supreme Court, contains both an objective and a subjective component," *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002), which collectively require Little to prove that she "subjectively perceive[d] the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception [was] objectively reasonable," *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999). In moving for summary judgment, Topre never addresses whether Little can satisfy the subjective prong, (*see* doc. 23 at 14–16), and the court thus cabins its analysis to the objective prong.[11]

To succeed on the objective prong of the "severe or pervasive" test, Little must show that a reasonable person in her position would perceive the working environment to be so hostile or abusive that it affects the very nature of the job. *Harris*, 510 U.S. at 21. This objective inquiry "is not subject to mathematical precision but is judged from the circumstantial facts" of each case. *Melton*, 166 F.4th

---

[10] In its brief, Topre sets out the same five factors outlined above and then argues that Little "cannot satisfy the fourth and fifth elements of this standard." (Doc. 23 at 14). Topre devotes the entirety of its hostile workplace argument to arguing that Little did not endure sufficiently severe or pervasive harassment, *id.* at 14–16, and that there is no basis for employer liability, *id.* at 17–22. Topre never contests that Little is a member of a protected class who endured unwelcome harassment on the basis of sex. (*See generally* doc. 23). The court need not address these elements or the fifth element—whether there is a basis for employer liability—because the court finds there is no factual dispute that she did not endure severe or pervasive harassment. *See Melton*, 166 F.4th at 918 (all five elements are required for a sex-based Title VII hostile workplace claim).

[11] Moreover, the court's finding that the undisputed evidence shows that Little cannot succeed on the objective prong obviates the need to consider the subjective prong, as both are required. *See Miller*, 277 F.3d at 1276.

at 918 (citation and quotation marks omitted). When, as here, the alleged harassment includes physical contact, as opposed to exclusively verbal harassment, the court "cannot look solely to the 'physical acts performed,'" but must consider the totality of the circumstances in which the act occurred to assess whether the working environment itself was objectively hostile. *Stancombe v. New Process Steel LP*, 652 F. App'x 729, 735 (11th Cir. 2016) (per curiam) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)). "Either severity *or* pervasiveness is sufficient to establish a violation of Title VII," *Reeves*, 594 F.3d at 808, and "[i]n evaluating the objective severity of the harassment, [courts] consider, among other factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance," *Miller*, 277 F.3d at 1276.

The Supreme Court has been clear, however, that "Title VII is not a civility code, and not all profane or sexual language or conduct will constitute discrimination in the terms and conditions of employment." *Reeves*, 594 F.3d at 807. *See also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[S]tandards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code."). Thus, for purposes of imposing Title VII liability on Topre, the question is *not* solely whether Little endured an act of sex-based harassment, but

13

whether such harassment was so objectively severe or pervasive as to be "endemic to" the workplace, *Reeves*, 594 F.3d at 813–14, and "alter the terms and conditions of [her] work," *Baldwin v. BlueCross/Blue Shield*, 480 F.3d 1287, 1300 (11th Cir. 2007).

Applying this "demanding" standard in order to prevent Title VII from becoming a general civility code, *Faragher*, 524 U.S. at 788, courts routinely find that undisputed acts of harassment, however vulgar or objectionable, do not create a hostile workplace because they are not objectively severe or pervasive enough to alter the very conditions of employment. For example, in *Lockett v. Choice Hotels International, Inc.*, the trial court granted summary judgment to a defendant-employer on the basis that the conduct at issue, including "sexual remarks and two incidents of brief touching," was not objectively severe or pervasive. 315 F. App'x 862, 865–67 (11th Cir. 2009) (per curiam). On appeal, the Eleventh Circuit affirmed, holding that it "agree[d] with the district court that [the individual defendant's] alleged conduct was offensive but did not rise to the level of being severe, physically threatening, or humiliating" enough to alter the terms and conditions of the plaintiff's employment. *Id.* at 866 (quotation marks and brackets omitted). In *Guthrie v. Waffle House, Inc.*, the Eleventh Circuit similarly affirmed the grant of summary judgment to a defendant-employer whose employee (the plaintiff) experienced "only a few dozen comments or actions . . . spread out over a period of

14

eleven months," including having her buttocks grabbed "two to five times." 460 F. App'x 803, 804 (11th Cir. 2012) (per curiam). The Eleventh Circuit found that the conduct was "rude and boorish" but "well short of conduct so severe as to alter or change the terms of [the plaintiff's] working conditions." *Id.* at 807 (citation, quotation marks, and brackets omitted). In *Stancombe v. New Process Steel, LP*, the defendant "hugged [the plaintiff] and touched his buttocks three times in a row," and then, two days later, the plaintiff "was alone and kneeling down when [the defendant] came over to [the plaintiff's] area, grabbed his head, and made three pelvic thrusts in his face." 652 F. App'x at 731. The Eleventh Circuit affirmed this court's grant of summary judgment in favor of the employer because, "[w]hile the second incident arguably was severe and clearly was vulgar and wholly inappropriate," these "two isolated incidents were not so severe as to amount to a discriminatory change in terms and conditions of employment." *Id.* at 735–36. In *Parker v. Consolidated Pipe & Supply Company*, the plaintiff's supervisor jabbed plaintiff's buttocks with a broomstick and other objects and placed the plaintiff's check stub in the open crotch of his pants, saying, "Come and get it." No. 5:18-cv-1960, 2020 WL 1285842, at *7 (N.D. Ala. Mar. 18, 2020). This court held that such conduct was "inappropriate, vulgar, and . . . clearly repulsive," but nonetheless granted the defendant-employer's motion for summary judgment because the harassment consisted only of "a handful of incidents over a four-month period,"

15

which, to an objective person, would not alter the very terms of employment. *Id.* at *7–*8. Conversely, in *Reeves*, the Eleventh Circuit reversed the trial court's grant of summary judgment to an employer because, in part, the evidence showed that the harassment "occurred on a daily basis." 594 F.3d at 804 (quotation marks omitted). With the proper standard in mind, the court turns to Topre's motion.

When the court considers the circumstantial facts, *Melton*, 166 F.4th at 918, by looking past the physical acts performed, *Stancombe*, 652 F. App'x at 734, it finds that the undisputed record in this case shows that Ozbolt's conduct was inappropriate and objectionable but not so severe or pervasive as to alter the terms and conditions of Little's employment, *Baldwin*, 480 F.3d at 1300.[12] In moving for summary judgment, Topre argues that Little's hostile workplace claim "is based on a single alleged instance of inappropriate touching of her buttocks by Ozbolt," a "single event [which] simply did not—and could not have—altered the terms and conditions of [her] employment or created a hostile and abusive working environment." (Doc. 23 at 15). Topre is correct that the undisputed record of this case shows that the October 4, 2023, incident was the only harassment that Little ever experienced: she testified as much at her deposition, (doc. 21-3 at 19, 69:8–15), and reaffirmed it in her opposition to summary judgment, (docs. 23 at 7, ¶ 39; 27 at

---

[12] The court expresses no opinion on whether Ozbolt's conduct, however objectionable, rises to the level of common law battery or outrage, as Little alleges. (Doc. 1, ¶¶ 32–39; 56–64).

16

4, ¶ 39). Indeed, Little has consistently admitted this for the entire duration of this case, as she alleges in her Complaint that "**[s]tarting** on October 4, 2023, [she] **began** being subject to a hostile work environment," (doc. 1, ¶ 21) (emphasis added), and, at oral argument on Topre's motion, her counsel conceded that "it's not in dispute that [Little] only suffered a single incident" of harassment, Transcript of Oral Argument at 13:8–9.

Beyond the isolation of the event, Topre argues that the act of harassment in and of itself was not adequately severe to permit Title VII liability: "The contact was brief, was over her clothes, and was not directed at her genitals . . . It was not viewed by others . . . Nor was it inherently threatening . . . It did not interfere with [Little's] ability to work: [she] completed most of her shift before even making her internal complaint." *Id.* Topre also points to many of the cases cited in this Memorandum Opinion, including *Lockett*, *Guthrie*, and *Parker*, for the proposition that "[m]ore frequent and more severe conduct [is] routinely found to be insufficient to constitute actionable harassment under Title VII." *Id.* at 15–16.

Mindful of the Supreme Court's admonition to enforce a "demanding" standard to prevent Title VII from becoming "a general civility code," *Faragher*, 524 U.S. at 788, the court is persuaded by Topre's argument, as no reasonable jury could find that Little experienced severe or pervasive harassment. The only alleged harassment Little experienced was a single, quick poke in the buttocks, outside of

17

her blue jeans, with what was likely a pen. The poke did not cause her to trip or fall, bruise, bleed, seek medical attention, or file an injury report. (Doc. 21-3 at 32, 122:20–123:12). She was not "injured from the touching," continued working for several more hours until the end of her shift, sat in the subsequent meeting with only pregnancy-related discomfort, and then drove herself home. *Id.* at 42, 161:2–162:5. No "reasonable person would find [this single incident] so hostile or abusive" as to alter the terms and conditions of her employment, *Harris*, 510 U.S. at 21; *Baldwin*, 480 F.3d at 1300, and, as correctly pointed out by Topre, it falls well short of ostensibly more egregious conduct that has also failed to state a Title VII claim in cases such as *Lockett*, *Stancombe*, *Guthrie*, and *Parker*, *supra*. Ozbolt's conduct was "inappropriate [and] vulgar," *Parker*, 2020 WL 1285842, at *7, but no objectively reasonable person could find that it was severe or pervasive enough to be "endemic to" the workplace, *Reeves*, 594 F.3d at 813–14, to the point that it "alter[ed] the terms and conditions of [Little's] employment," *Baldwin*, 480 F.3d at 1300.

In opposing summary judgment, Little makes four arguments to attempt to create a fact question on whether she endured severe or pervasive harassment, none of which are persuasive. First, Little takes issue with Topre's argument that the incident with Ozbolt on October 4, 2023, was an isolated occurrence because the record reveals "multiple specific incidents where Ozbolt engaged in sexually harassing behavior against other female co-employees." (Doc. 27 at 12). To support

18

this point, Little relies on the complaints about Ozbolt from Ms. Rich, Ms. Esco, and Ms. McDowell, *id.*, but the court finds that these are insufficient to raise a factual question on whether the working environment was so severely or pervasively hostile as to alter the terms and conditions of employment.[13] As outlined *supra*, Ms. Rich testified that Ozbolt "would say flirtatious to inappropriate things to [her] and others," (doc. 21-8, ¶ 6), but she does not provide any testimony from which the court could establish a timeline for these events, *see generally* doc. 21-8. Indeed, her affidavit makes clear that the inappropriate language was no later than March 2022, *see id.*, ¶¶ 6, 8, the same month that Ozbolt licked her ear, *id.*, ¶ 8, which was nineteen months before the incident forming the basis of this suit. Ms. McDowell similarly testified to a single incident of inappropriate touching by Ozbolt "[i]n or around late June 2023," (doc. 21-10, ¶ 6), four months before the incident with the pen in October. After this, Ms. McDowell "did not have any further incidents with Mr. Ozbolt that [she] considered sexual." *Id.*, ¶ 11. Finally, Little's reliance on Ms. Esco's affidavit is perhaps the least persuasive, as Ms. Esco testified to a single, undated incident of physical contact, (doc. 21-9, ¶ 4), undated jokes that were not "a daily thing," *id.*, ¶ 6, and yelling and profanity that "was not sexual in nature," *id.*, ¶

---

[13] In support of its Motion for Summary Judgment, Topre argues that the evidence of Ms. Rich, Ms. Esco, and Ms. McDowell, as well as another rumor Little relies on about an incident with Ozbolt and a female employee named DJ, (doc. 27 at 12), is riddled with inadmissible hearsay, (doc. 29 at 5–9). The court finds it unnecessary to address the merits of this argument because, even assuming *arguendo* that all of the evidence is properly admissible, it would still fall well-short of the threshold for severe or pervasive harassment.

19

3. Little refers to these as "multiple specific incidents where Ozbolt engaged in sexually harassing behavior," (doc. 27 at 12), but the undisputed evidence shows these events were scattered over the course of at least nineteen months, from March 2022 to October 2023, making them isolated rather than pervasive. Indeed, the closest that Little is able to pinpoint one of these occurrences relative to her own experience was Ozbolt touching Ms. McDowell four months earlier.

Little is correct that "there is no magic number [of incidents] to constitute a hostile work environment," *id.* at 11 (citation and quotation marks omitted), but courts consistently require greater concentration and frequency to find that harassment was sufficiently severe or pervasive, *compare Guthrie*, 460 F. App'x at 807 (harassment "spread out over a period of eleven months" did not support a hostile workplace claim), *with Reeves*, 594 F.3d at 804 (daily harassment was sufficient for a hostile workplace claim to survive summary judgment). As outlined *supra*, the ultimate question is whether the harassment is "endemic to" the workplace, *Reeves*, 594 F.3d at 813–14, and the combined evidence of Little, Ms. Rich, Ms. Esco, and Ms. McDowell proves only isolated conduct, however objectionable.

Second, Little argues that Ozbolt's conduct was "sufficiently severe" when considered within the broader context of the Topre plant. (Doc. 27 at 13). Little is correct that acts of alleged harassment must be considered in their social context,

*see, e.g.*, *Stancombe*, 652 F. App'x at 735, but her only attempt to demonstrate such context is to rely on the testimony from Ms. Rich, Ms. Esco, and Ms. McDowell, (doc. 27 at 13), which is insufficient for the reasons outlined *supra*.

Third, Little takes issue with Topre's assertion that "Ozbolt's harassment 'was not viewed by others and thus was not humiliating.'" (Doc. 27 at 14 (quoting doc. 23 at 18)). Little argues that "it is clear that Ozbolt's harassment not only humiliated [her], but left damage that extended into [her] professional and personal life," citing her own deposition testimony about the anxiety and interpersonal problems that followed the incident. *Id.* The court is not persuaded by this argument, as it impermissibly shifts the focus from the objective qualities of the workplace, *Mendoza*, 195 F.3d at 1246, to the subjective effects on Little *after* the alleged harassment. The Supreme Court has expressly precluded such burden shifting, holding,

> We therefore believe the District Court erred in relying on whether the conduct seriously affected plaintiff's psychological well-being or led her to suffer injury. **Such an inquiry may needlessly focus the factfinder's attention on concrete psychological harm, an element Title VII does not require.** Certainly Title VII bars conduct that would seriously affect a reasonable person's psychological well-being, but the statute is not limited to such conduct. So long as the environment would reasonably be perceived, and is perceived, as hostile or abusive, there is no need for it also to be psychologically injurious.

*Harris*, 510 U.S. at 22 (internal citation and quotation marks omitted) (emphasis added). Topre is correct in its assertion that Little's "alleged emotional distress is a

21

component of her damages, and not part of th[e] objective portion of her prima facie case." (Doc. 29 at 12). Thus, Little's reliance on her own testimony about the alleged mental and interpersonal effects of the incident with Ozbolt has no bearing on the court's "severe or pervasive" analysis and is insufficient to defeat summary judgment.

Little's final argument that is relevant to the court's "severe or pervasive" analysis is her assertion that "[w]hen viewed in the light most favorable to [her], a reasonable person could determine that Ozbolt's conduct interfered with [her] job." (Doc. 27 at 15). Little argues that the Eleventh Circuit has held that "harassment need not be shown to be so extreme that it produces tangible effects on job performance," *id.* (quoting *Miller*, 277 F.3d at 1277), but the harassment must nonetheless be sufficiently severe or pervasive in and of itself, *Reeves*, 594 F.3d at 809, which is not the case here, *supra*.

In sum, the court agrees with Topre that Little's "allegation of a single incident involving Ozbolt . . . sliding a pen down the center of her buttocks over her jeans fails to meet the standards of severity or pervasiveness required to establish unlawful sexual harassment." (Doc. 23 at 14). When the court considers the totality of the circumstances, *Stancombe*, 652 F. App'x at 735, including the frequency and severity of the conduct, whether the conduct was physically threatening or humiliating, and whether the conduct unreasonably interfered with Little's job

22

performance, *Miller*, 277 F.3d at 1276, it finds that the undisputed evidence shows that she was not subject to objectively severe or pervasive harassment. Her Title VII hostile workplace claim therefore fails as a matter of law, *see Melton*, 166 F.4th at 918, and Topre is entitled to summary judgment as to Count One.

B. <u>Counts Two, Three, and Four</u>

Having found that Topre's motion is due to be granted as to Count One, *supra*, the court is left to consider its argument for summary judgment as to Counts Three and Four, for common-law failure to train and outrage, respectively. (Docs. 1, ¶¶ 40–64; 23 at 23–28). The court finds that it need not reach the merits of Topre's arguments because it declines to exercise supplemental subject matter jurisdiction over Counts Two, Three, and Four of Little's Complaint.

As the plaintiff, it is Little's burden to prove that this court has subject matter jurisdiction over each of her claims, *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1248 n.2 (11th Cir. 2005), and she asserts that this court can exercise supplemental jurisdiction over Counts Two, Three, and Four, (doc. 1, ¶ 2). Supplemental jurisdiction allows a federal court to hear a claim over which it lacks *original* subject matter jurisdiction if the claim is "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). *See also Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 25 (2025) ("[I]f the complaint also asserts state-law

23

claims arising out of the same facts [as the federal claims], the federal court may adjudicate those claims too, in the exercise of what is called supplemental jurisdiction."). Because it is not a basis for original subject matter jurisdiction, after dismissing any federal claims, district courts have "the discretion either to continue to exercise supplemental jurisdiction over the state claims or to dismiss them." *Silas v. Sheriff of Broward Cnty.*, 55 F.4th 863, 865 (11th Cir. 2022). This "discretion is expressly conferred . . . by statute," *id.* at 866 (citation and quotation marks omitted), as federal law holds that "district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c)(3). Indeed, "every litigant who brings supplemental claims in court knowingly risks the dismissal of those claims," *Ameritox, Ltd. v. Millennium Lab'ys., Inc.*, 803 F.3d 518, 539 (11th Cir. 2015), and the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial," *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (per curiam). The Supreme Court has similarly "put a thumb on the scale" in favor of district courts declining to exercise supplemental jurisdiction and dismissing state law claims, *Silas*, 55 F.4th at 866, holding that "if the federal claims are dismissed before trial . . . **the state claims should be dismissed as well**," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (emphasis added). *See also Royal Canin U.S.A.,*

24

*Inc.*, 604 U.S. at 32 ("[A]lthough supplemental jurisdiction persists, the district court need not exercise it[.] Instead, the court may (and indeed, ordinarily should) kick the case to state court.").

Because "concerns of federalism—namely, of federal courts of limited jurisdiction weighing in on state law—counsel in favor of dismissing state-law claims after the federal claims are dismissed," a district court, "exercising its already broad discretion, will rarely err by declining supplemental jurisdiction after the federal claims that supported its jurisdiction are dismissed." *Silas*, 55 F.4th at 866. This court regularly does so. *See, e.g.*, *Esters v. Strickland*, No. 2:20-cv-698, 2023 WL 4534604, at *11–*12 (N.D. Ala. July 13, 2023) (granting summary judgment on federal law claims and declining to exercise supplemental jurisdiction over remaining state law claims).

The court finds that, insofar as it has original subject matter jurisdiction over Count One, which explicitly "aris[es] under the . . . laws . . . of the United States," 28 U.S.C. § 1331, it could consider Counts Two, Three, and Four under its supplemental jurisdiction, as they are all "so related . . . that they form part of the same case or controversy," 28 U.S.C. § 1367(a). Because it is granting Topre's Motion for Summary Judgment as to Count One, *supra*, the court must *sua sponte* consider whether to exercise its "broad" discretion to decline to consider Counts Two, Three, and Four, *Silas*, 55 F.4th at 866. In deference to the Supreme Court and

25

the Eleventh Circuit's repeated encouragements to do so, *Royal Canin U.S.A., Inc.*, 604 U.S. at 32; *Raney*, 370 F.3d at 1089, as well as the strong preference for allowing state courts to decide questions of state law, *Silas*, 55 F.4th at 866, the court declines to exercise supplemental jurisdiction over Counts Two, Three, and Four of Little's Complaint, 28 U.S.C. § 1367(c)(3).

## IV.   CONCLUSION

For all the reasons set forth herein, Defendant Topre America Corporation's Motion for Summary Judgment, (doc. 22), is **GRANTED** as to Count One. The court declines to exercise supplemental jurisdiction over Counts Two, Three, and Four, and they are **DISMISSED WITHOUT PREJUDICE**. Accordingly, Topre's motion is **DENIED AS MOOT** as to Counts Three and Four. The court will enter a separate final judgment.

**DONE** and **ORDERED** on August 4, 2026.

_____
**HAROLD D. MOOTY III**
UNITED STATES DISTRICT JUDGE

26